UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LINDY MACK,

            Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

18-CV-974-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 26)

Plaintiff Lindy Mack ("plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 17) is denied and defendant's motion (Dkt. No. 24) is granted.

## BACKGROUND[1]

On January 7, 2015, plaintiff applied for DIB and SSI alleging disability beginning on July 1, 2014 due to scoliosis, disc herniation, sciatica, fibromyalgia, and depression. (Tr. 196-97, 198-203, 285)[2] On April 13, 2015, plaintiff's claim was initially denied, and

---

[1] The Court presumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

[2] References to "Tr." are to the administrative record in this case. (Dkt. No. 15)

she timely requested a hearing. (Tr. 97-132) Plaintiff appeared and testified at a video hearing held on May 23, 2017, before Administrative Law Judge ("ALJ") Hortensia Haaversen in Falls Church, Virginia. An impartial vocational expert also appeared and testified. (Tr. 32-72)

On December 29, 2017, the ALJ issued an unfavorable decision. (Tr. 7-24) The Appeals Council subsequently denied her request for review on July 3, 2018, making the ALJ's decision the final determination of the Commissioner. (Tr. 1-6) This action followed. (Dkt. No. 1)

## DISCUSSION

### I.   Scope of Judicial Review

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or

3

whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the

claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date of June 14, 2011. (Tr. 12) At step two, the ALJ found that plaintiff had severe impairment of scoliosis with degenerative changes to the cervical and lumbar spine. (Tr. 13) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 14) Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform the full range of light work.[3] (Tr. 14) Proceeding to step four, the ALJ found that plaintiff could not perform her past relevant work as a tree pruner and fruit/apple picker. (Tr. 17) Proceeding to step five, and after considering testimony from a vocational expert, in addition to plaintiff's age, work experience and RFC, the ALJ found that plaintiff could perform other work existing in significant numbers in the national economy such as garment sorter, marker, and linen grader. (Tr. 18) Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. (Tr. 18-19)

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." See 20 C.F.R. § 404.1567(b).

IV.   Plaintiff's Challenges

Plaintiff contends that remand is warranted because the ALJ erroneously formulated the RFC based upon her own lay opinion and that she improperly discounted plaintiff's subjective complaints. (Dkt. No. 17-1 at 9) The Court disagrees.

A.   Opinion Evidence

Plaintiff underwent a consultative examination with Donna Miller, D.O., in March of 2015. (Tr. 353-56) Plaintiff reported cooking, cleaning, doing laundry, caring for her child, watching television, shopping, and attending to her personal care needs. (Tr. 354) On examination, plaintiff appeared to be in no acute distress, and her gait was normal. (Tr. 354) She was able to walk on her heels and toes without difficulty. (Tr. 354) Her squat was full and her stance was normal. (Tr. 354) She was able to rise from her chair without difficulty. (Tr. 354) A musculoskeletal examination showed some spinal range of motion limitations. (Tr. 355) However, straight leg raise tests were negative. (Tr. 355) Plaintiff displayed five out of five strength in her upper and lower extremities. (Tr. 355) Imaging studies reviewed by Dr. Miller revealed straightening of the cervical and lumbar spine. (Tr. 355)

Dr. Miller's assessment identified chronic neck pain with bulging and herniated discs and chronic low back pain with bulging and herniated discs. (Tr. 356) Dr. Miller opined that the only functional limitation caused by these impairments was a "mild to moderate limitation in heavy lifting, bending, carrying, pushing, and pulling." (Tr. 356)

Dr. Miller provided the only medical opinion of record. In evaluating this opinion, the ALJ afforded it "some weight" because it was "somewhat vague." (Tr. 17) The ALJ observed that while Dr. Miller did not provide a function-by-function assessment of

7

plaintiff's abilities, the imaging studies evidencing spinal abnormalities supported limiting the plaintiff's exertional activities to prevent exacerbating her pain. (Tr. 17)

It is an ALJ's duty to look to all the evidence, including medical opinions, and formulate an RFC based on the record as a whole. See Snell v. Apfel, 177 F.3d 128, 133 (2nd Cir. 1999) (the ultimate responsibility to determine a claimant's RFC rests solely with the ALJ). It is well-settled that an ALJ may not use her own lay opinion against the expertise of a doctor's opinion. See Riccobono v. Saul, 796 Fed. Appx. 49, 50 (2d Cir. 2020) ("[T]he ALJ cannot arbitrarily substitute h[er] own judgment for competent medical opinion.'") (quoting McBrayer v. Secretary of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983)). The Second Circuit has held, however, that an RFC can be supported by substantial evidence even if it does not correspond to any particular medical opinion. See Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (unpublished) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole). Moreover, the pertinent regulations do not require that the ALJ base the RFC on a medical opinion at all. See 20 C.F.R. § 404.1546(c) (stating an ALJ is responsible for assessing RFC); 20 C.F.R. § 404.1545(a)(3) (RFC is assessed based on all of the relevant medical and other evidence in the record).

Here, the ALJ formulated the RFC after considering the record evidence as a whole, as she was required to do. See 20 C.F.R. § 404.1545(a)(3) (residual functional capacity is assessed based on all of the relevant medical and other evidence in the record); see Matta, 508 Fed. Appx. at 56.

The only limitation found by Dr. Miller was a "mild to moderate limitation in heavy lifting, bending, carrying, pushing, and pulling." (Tr. 356) The ALJ provided the opinion some weight, noting that it was somewhat vague. (Tr. 17) Thus, the ALJ partially relied upon the opinion as it was consistent with RFC, which was supported by the lack of objective evidence demonstrating the severity of plaintiff's alleged limitations, multiple largely normal physical examination findings showing only spinal tenderness and range of motion limitations, and her ability to perform a variety of activities. (Tr. 17)

The record reveals that plaintiff had back surgery prior to her alleged onset of disability, and by September, 2011, she was in no acute distress and had full range of motion. (Tr. 488) She did not seek treatment for her back again until 2014, when imaging showed some spine straightening and a mild bulge. (Tr. 325) Plaintiff again displayed full range of motion and had unremarkable imaging studies in January of 2015. (Tr. 330, 333) In April, 2015, plaintiff saw her primary physician, David Stahl, M.D., for her back pain. Some limitation in range of motion was noted. (Tr. 457) Although it was recommended that plaintiff make an appointment with her back surgeon, she did not do so. (Tr. 455, 457)

An MRI in June, 2015, showed "small herniated discs." (Tr. 461, 473) Plaintiff returned to Dr. Stahl several times thereafter without complaints of back pain. (Tr. 463, 465, 467) She went to the emergency room for a wrist injury in March, 2017, and the following month was seen at Orleans Community Health for possible broken wrist and a sinus issue. Plaintiff did not mention back pain at either of those visits. (Tr. 497, 511)

Plaintiff testified that she stopped working in 2009 as she became pregnant and did not want to continue her job of picking apples. (Tr. 41) She later developed back

9

issues, and had back surgery in 2011. (Tr. 41) She lived with her father and her six-year-old daughter. (Tr. 41) She testified that she could not work as it was "hard to do anything," she could barely get off the couch, she got ill, her spine hurt, her feet hurt, and her wrist hurt. (Tr. 46) She told the ALJ that she could sit for 20 minutes or stand/walk for 30 minutes before having to change position due to low-back pain, and could lift about five pounds due to her wrist injury. (Tr. 46, 48, 50) In contrast, she reported to Dr. Miller that she could cook, clean, do laundry, care for her child, watched television, shopped, and attended to her personal needs. (Tr. 351)

Dr. Miller's opinion, while somewhat vague, was nonetheless consistent with the RFC. *See Pellam v. Astrue*, 508 Fed. Appx. 87, 90 (2d Cir. 2013) (consultative examiner's opinion identifying moderate to severe limitations "largely supported the ALJ's [RFC] assessment . . . ."); *see also Hazlewood v. Comm'r of Soc. Sec.*, No. 12-CV-798, 2013 WL 4039419, *7 (N.D.N.Y. 2013) (medical opinion that plaintiff had "mild to moderate limitations in walking, pushing and pulling" supported the "ALJ's determination that plaintiff could physically perform light work"); *Harrington v. Colvin*, 2015 WL 790756 at *15 (W.D.N.Y. Feb. 25, 2015) (a moderate limitation in sitting, standing and walking is not inconsistent with an RFC for light work). The medical record in this case, as summarized above, provided sufficient evidence from which the ALJ could assess plaintiff's RFC. *See, e.g., Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. Appx. 29, 34 (2d Cir. 2013) (No per se error for an ALJ to make an RFC determination without relying on a medical opinion when "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity."). Accordingly, the RFC was supported by substantial evidence, and remand on this ground is not required.

B.  Subjective Complaints

Plaintiff also contends that the ALJ erred in evaluating her subjective complaints. (Dkt. No. 17-1 at 14)

In finding that plaintiff's subjective complaints were not entirely consistent with the medical and other evidence of record, the ALJ explained:

> Although the record demonstrates that the claimant repeatedly sought care for neck and/or back pain, multiple imaging studies and physical examinations do not support the symptoms severity and associated limitations alleged by the claimant. Further, the claimant's ability to perform a variety of activities suggests that she functions at a fairly high level despite her back and neck pain. Moreover, the record reflects treatment gaps as well as times during which the claimant did not complain of back or neck pain. The record also does not evidence that the claimant tried physical therapy, injection therapy, or received treatment from the neurosurgeon to mitigate her pain.

(Tr. 15)

The evaluation of a plaintiff's subjective complaints is within the sole province of the ALJ as the trier of fact. *See Barbuto v. Colvin*, No. 13-CV-651, 2014 WL 3572412 at *5 (W.D.N.Y. July 21, 2014). The ALJ is not required to accept the Plaintiff's "subjective complaints without question; he may exercise discretion in weighing the credibility of the [Plaintiff's] testimony in light of the other evidence of record." *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Further, "[b]ecause the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence." *Hargrave v. Colvin*, No.13-CV-6308, 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014) (internal quotation omitted).

11

Here, the ALJ reasonably found that plaintiff's subjective complaints were inconsistent with the medical evidence. (Tr. 15) See 20 C.F.R. § 404.1529(c)(4) (an ALJ must consider whether there are conflicts between a claimant's statements and the rest of the evidence). The imaging, clinical findings, and Dr. Miller's opinion, as previously discussed, did not support plaintiff's complaints of debilitating symptoms. See Genier, 606 F.3d at 49 (In determining the RFC, an ALJ must evaluate a claimant's subjective complaints and determine whether they are consistent with the record as a whole).

The ALJ found that plaintiff's claims of extreme limitations were inconsistent with her gaps in treatment. (Tr. 15) While plaintiff argues that she once could not get an MRI due to a lapse in insurance in June, 2015, (see Dkt. No. 17-1 at 18; Tr. 458-59, 495), that MRI was obtained in July, 2015, and was considered by the ALJ. (Tr. 15) The ALJ correctly observed that plaintiff continued to undergo treatment for other issues, but did not make back complaints during her medical visits. The ALJ therefore did not err in this regard. See Cardoza v. Astrue, No. 10-CV-1951, 2012 WL 3727160, at *8 (D. Conn. Apr. 13, 2012) ("the record substantially supports the ALJ's findings concerning her gaps in treatment and her non-compliance with prescribed treatment, which were relevant considerations in the evaluation of [plaintiff's] credibility concerning the limitations caused by her impairments.").

The ALJ also appropriately noted that plaintiff performed activities that contradicted her claims of debilitating symptoms. See 20 C.F.R. § 404.1529(c)(3)(i) (ALJ must consider a claimant's activities); see also Pennock v. Comm'r of Soc. Sec., No. 14-CV-1524, 2016 WL 1128126, at *5 (N.D.N.Y. Feb. 23, 2016) ("An ALJ is entitled to take a plaintiff's activities of daily living into account in making a credibility determination."),

*adopted*, 2016 WL 1122065 (N.D.N.Y. Mar. 22, 2016); *Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (holding that the ALJ properly considered the claimant's daily activities, which were consistent with her RFC).

Finally, the ALJ properly considered plaintiff's conservative course of treatment (Tr. 15) *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (ALJ must consider the type of treatment); *see also Rivera v. Colvin*, No. 14-CV-00816, 2015 WL 6142860, *6 (W.D.N.Y. Oct. 19, 2015) (finding that the "ALJ was entitled to consider evidence that plaintiff pursued a conservative treatment as one factor in determining credibility"); *Pahl v. Berryhill*, No. 16-CV-538, 2018 WL 4327813, at *5 (W.D.N.Y. Sept. 11, 2018) (conservative course of treatment supported the ALJ's determination that the plaintiff was not as debilitated as she testified) Accordingly, the record before the ALJ provided substantial evidence for her factual findings regarding plaintiff's subjective claims. Remand is not warranted on this ground.

In sum, the ALJ's decision is supported by substantial evidence and free of legal error.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 17) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 24) is granted.

The Clerk of Court shall take all steps necessary to close this case.


**SO ORDERED.**

Dated:  September 29, 2020
Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge